## TRADERS & GENERAL INS. CO. v. MURPHREE.

### No. 13252.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 1, 1935.

Rehearing Denied Nov. 29, 1935.

Bullington, Humphrey & King, of Wichita Falls, and Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

MARTIN, Justice.

Tom Murphree, a worker in the Archer county oil fields as an employee of the firm of Morrison & Jackson, on June 1, 1932, while running a tubing, rod, and casing pulling machine, got some small particles of steel blown into his eyes, causing some inflammation and inconvenience. His employer, Mr. Jackson, took him to a hospital at Wichita Falls, and a physician, Dr. Mangum, removed the particles of steel, and Murphree went back to work, still suffering some with the right eye, but the inflammation soon subsided and the injury, to use his own expression, "passed out of his mind." For several days he wore a bandage over the right eye, and, as time passed, he ceased to suffer any inconvenience with said eye, except now and then a sort of film came over his right eye, but when he would wipe it the film would pass away.

Some seven or eight months afterward, on his way to a dance, at night, riding in a car, he was struck in the face by the limb of a mesquite tree and sustained an injury to his right eye again which caused serious trouble. The next day he was taken to Dr. Parrish, a general practitioner at Holliday, Tex., who found the eye badly inflamed and "cloudy and milky." Dr. Parrish treated the eye a few days and then afterward he was taken to a specialist in Wichita Falls, who discovered that he had a traumatic cataract in his right eye, from the effect of which the sight of said eye has been completely lost. Murphree then consulted counsel and filed claim with the Industrial Accident Board, and, from an adverse award of the board, brought his case before the district court, where the issues of fact were submitted to a jury, and

upon the jury's verdict the court rendered judgment for Murphree for compensation for the total loss of his right eye in the sum of $20 per week for 100 weeks.

Motion for a new trial was overruled by the court, and the insurance company brings the case to this court by appeal.

The judgment of the trial court is challenged by appellant in eleven assignments of error; the first three of which present the question of the insufficiency of the evidence. We will treat the three together. Appellant strongly insists that the court erred in refusing a peremptory instruction in its favor and in refusing to grant a new trial upon the same grounds. We have carefully examined the briefs and authorities cited, and have read the statement of facts in an effort to discover just what the evidence was. The real question in the case was whether the loss of appellee's eye was due to the steel dust from the pulling machine or to the later injury sustained by the blow from the mesquite limb while going to the dance several months later. It was contended by appellant that the eye was pierced by a mesquite thorn.

■ From an examination of the record we are inclined to the opinion that the evidence rather strongly predominates in favor of appellant's theory of the case, that is, that the loss of the eye was attributable to the later injury, but as the case must be reversed upon another assignment, and it may be that upon another trial the testimony may not be the same but may be stronger, one way or the other, we will not reverse the judgment for the reasons set forth in assignments 1, 2, and 3. The trial court had a far better opportunity to pass upon the question than we have, seeing and hearing the witnesses as they testified on the witness stand, and appellate courts are not only strongly inclined to give due credit to the verdict of a jury, but also to rely very strongly upon the wisdom and discretion of the trial judge in passing upon the real weight of the testimony in any given case, and we cannot say, from the record before us, that there is no testimony in support of the verdict.

The fourth and fifth assignments of error attack the action of the court in instructing the jury as to the law as follows:

"3. You are instructed that under the Workmen's Compensation Law of the State of Texas it is the duty of an employee to give notice of his injury to the employer within 30 days from the time the injury occurred, and to file a claim for compensation with the Industrial Accident Board within six months of the time of his injury, unless good cause is shown for the failure to do so.

"Bearing in mind the foregoing instructions, do you find from a preponderance of the evidence that a reasonably prudent person situated as the plaintiff was situated would have delayed filing the claim, until it was filed?

"4. You are instructed that under the Workmen's Compensation Law of the State of Texas it is the duty of an employee to give notice of his injury to the employer within 30 days from the time the injury occurred, and to file a claim for compensation with the Industrial Accident Board within six months of the time of his injury, unless good cause is shown for the failure to do so, and by the term 'good cause' is meant such an excuse for the failure to give the notice and to file the claim within the statutory period as would appear to an ordinarily prudent person to be a reasonable excuse."

■■ These charges appear in the transcript to be requested charges asked by the plaintiff below and given by the court. To say the least of the matter, they were wholly unnecessary, and the entire subject was properly covered by special issues 9 and 10 of the charge prepared by the court. In another trial we suggest that only such part of said charge No. 4 be given, if any, as defines the term "good cause." Both instructions No. 3 and No. 4, requested by plaintiff below, state in identical language a proposition of law with which the jury should not be concerned and wholly unnecessary to their proper understanding of the issue presented in special issue No. 10 of the court's main charge, and of which the issue presented with instruction No. 3 is a repetition. We are not entirely in accord upon the question of whether this situation presents reversible error, but as the judgment is to be reversed for other reasons, we content ourselves with above suggestions. The trial court can easily avoid the giving of charges partaking of the nature of general charges. Authorities are somewhat in conflict as to what is and what is not a general charge as distinguished from necessary definitions and explanations, as contemplated by the statute governing the submission of cases on special issues and what we have here said may well result in

the avoidance of possible error in a future trial of the case.

By its sixth assignment of error the appellant complains that the trial court erred in failing to define the word "injury" as used in the special issues submitted. The attention of the court was specifically called to this omission, and his action specifically excepted to in the appellant's exceptions and objections to the charge. Appellee makes the point that no definition was prepared and tendered to the court. But this does not seem to be necessary in order to save the point under late decisions. 3 Tex. Jur. § 140, and authorities there cited.

Article 8309, § 1, subd. 5, R.S., defines compensable injury to be "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." This statutory definition is essentially different from the ordinary acceptation of the term "injury." Ordinarily, the term would include pain and suffering, mental and physical, any disagreeable emotion of the mind, loss of reputation, or pecuniary loss, but in compensation cases its meaning is confined to "damage" of some sort or "harm" of some kind "to the physical structure of the body." In this case such definition was peculiarly applicable, and should have been given. The contest in the trial court was waged around this particular question. That particles of steel got into appellee's eyes while he was engaged in the course of his employment was abundantly proven and is admitted; that they produced injury such as extreme physical pain and suffering goes without saying; but the appellant strongly contends by pleading and proof that the "physical structure" of the eye was not damaged; that the outer covering was not pierced, and that the real "damage" came from another and a different cause at a far later date. The jury should have been told the legal meaning of the word and not left to speculate upon the amount of physical pain and suffering appellee doubtless experienced from the steel dust in his eye. The assignment is sustained. Commercial Standard Ins. Co. v. Noack (Tex.Com. App.) 62 S.W.(2d) 72, and authorities there cited.

The seventh assignment complains of the action of the trial court in overruling objection to a hypothetical question propounded to one of the doctors, and the eighth is based upon a leading question propounded to appellee by his attorney. As neither of these things are likely to occur in another trial, we pass them with the statement that while they both present error we do not believe it of such serious nature in either instance as to require reversal.

The ninth, tenth, and eleventh assignments attack the judgment of the court as not supported by the verdict of the jury. It appears that the jury found, in answer to special issues, that 15 per cent. of the appellee's incapacity was caused by the mesquite limb and 85 per cent. by the steel dust. They also found in answer to special issue No. 10–A, that the appellee would have lost his eye from the steel dust if he had not received the subsequent injury from the mesquite limb, and then, in answer to issue 31–A, they find that he would have suffered only 85 per cent. of his incapacity if he had not been struck by the mesquite limb. Just how the trial court managed to reconcile these findings and get out of them a judgement to the effect that he received the injury resulting in the loss of his eye in the course of his employment on June 1, 1932, we fail to understand.

It seems to us that there is an irreconcilable conflict between the answers to issues 10–A and 31–A, and that the jury meant to say that 85 per cent. of appellee's incapacity was attributable to the injury caused by the steel dust, and, if this be true, the court would hardly be warranted in giving judgment for the full compensation for the loss of an eye.

However, this may not occur upon a retrial of the cause, but if it does, we think the court should set aside such a verdict and award a new trial, and that this should have been done in the trial below.

For the errors pointed out, the judgment should be, and is, reversed and remanded.